UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DARRELL EWING, # 623073, et al.,   )
   )
          Plaintiffs,   )
   )   Case No. 1:17-cv-505
v.   )
   )   Honorable Paul L. Maloney
THOMAS FINCO, et al.,   )
   )
          Defendants.   )
_____)

## **REPORT AND RECOMMENDATION**

This is a civil rights action brought by five state prisoners under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc-1(a)(1)-(2).  The plaintiffs are prisoners Darrell Ewing, Terico Allen, Ramon King, Diarra Bryant, and Robert Dykes.  Plaintiffs' complaint arises out of conditions of their confinement in 2014 and 2015 at the Chippewa Correctional Facility (URF).  The defendants are three former employees of the Michigan Department of Corrections:  Deputy Director Thomas Finco, Special Activities Coordinator Michael Martin, and his successor as Special Activities Coordinator, David Leach.

Each plaintiff claims violation of his rights under the First Amendment's Free Exercise Clause, the Fourteenth Amendment's Equal Protection Clause, and statutory rights under RLUIPA.

- Plaintiff Ewing alleges that, in August or September 2015, defendants Leach and Martin denied his request to eat from URF's vegan meal line.

- Plaintiff Allen alleges that, in November 2014, defendants denied his request for a soy-free religious diet, and in August 2014, they denied his request to eat from the vegan meal line.

- Plaintiff King alleges that, in November 2014, defendants denied his request for a soy-free religious diet, and he claims that his September 29, 2014, meal was cross-contaminated with pork because URF food service workers were handling multiple meal lines without changing gloves.

- Plaintiff Bryant alleges that, in October 2014, defendant Leach denied his request for a soy-free diet and interfered with his ability to access URF's religiously-approved vegan meal line, and that his meals on August 11 and September 22, 2014, were cross-contaminated with pork.

- Plaintiff Dykes alleges that, in November 2015, defendants denied his request to eat from URF's religious vegan diet line.[1]

_____

[1] All other claims have been dismissed.  (ECF No. 31).

Plaintiffs seek an award of damages against defendants in their individual capacities for alleged constitutional violations and injunctive relief against defendants Finco and Leach under RULIPA against defendants in their official capacities.

The matter is before the Court on defendants' motion for summary judgment. (ECF No. 45). Plaintiffs Ewing, Allen, Dykes, and King oppose the motion[2] (ECF No. 51- 52, 54-55, 57, 60) and defendants filed four separate reply briefs.[3] (ECF No. 59, 62-64). For the reasons set forth herein, I recommend that that the Court grant defendants' motion for summary judgment and enter judgment in defendants' favor on all plaintiff's claims.

### Summary Judgment Standards

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require

---

[2] Plaintiff Bryant did not file a response to defendants' motion for summary judgment. None of the *pro se* litigants can act in a representative capacity for others. Each plaintiff is limited to representing himself on his own claims. 28 U.S.C. § 1654; *see Garrison v. Michigan Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009).

[3] Under Local Rule 7.2(c), leave of Court is required to file a sur-reply brief. W.D. MICH. LCIVR 7.2(c). Plaintiff Dykes's unauthorized sur-reply brief (ECF No. 66) is disregarded.

It is noted that the entry for ECF No. 57 is inaccurate. It is not a document filed by defendant Finco. It is plaintiff Allen's declaration in opposition to defendants' motion for summary judgment and a declaration by a non-party prisoner. The docketing error apparently stems from plaintiff Allen labeling his declaration as being in support of his motion for summary judgment, but he never filed such a motion.

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Rocheleau v. Elder Living Const., LLC*, 814 F.3d 398, 400 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *France v. Lucas*, 836 F.3d 612, 624 (6th Cir. 2016).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim.  *See Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).  Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings.  *See Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 462 (6th Cir. 2019).  The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see AES-Apex Employer Servs., Inc. v. Rotondo*, 924 F.3d 857, 866 (6th Cir. 2019) ("[C]asting only [a] 'metaphysical doubt' is insufficient to survive summary judgment.") (quoting

*Matsushita*, 475 U.S. at 586). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252)); *see Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018).

## Qualified Immunity

Defendants also argue that they are entitled to summary judgment on the basis of qualified immunity. "Once [an] official[ ] raise[s] the qualified immunity defense, the plaintiff bears the burden to 'demonstrate that the official [is] not entitled to qualified immunity.'" *LeFever v. Ferguson*, 645 F. App'x 438, 442 (6th Cir. 2016) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

"A government official sued under section 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014); *see Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015). The first prong of qualified immunity analysis is whether the plaintiff has alleged facts showing that defendant's conduct violated a constitutional or statutory right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong is whether the right was "clearly established" at the time of the defendant's alleged misconduct. *Id.* Trial courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

-5-

A qualified immunity defense can be asserted at various stages of the litigation, including the summary judgment stage.  *See English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994).  The qualified immunity inquiry at the summary judgment stage is distinguished from the Rule 12(b)(6) stage in that generalized notice pleading no longer suffices, and the broader summary judgment record provides the framework within which the actions of each individual defendant must be evaluated.  At the summary judgment stage, "the plaintiff must, at a minimum, offer sufficient evidence to create a 'genuine issue of fact,' that is, 'evidence on which a jury could reasonably find for the plaintiff.'"  *Thompson v. City of Lebanon, Tenn.*, 831 F.3d 366, 370 (6th Cir. 2016).

In *Brosseau v. Haugen*, the Supreme Court examined the underlying purpose of the requirement that the law be clearly established:

> Qualified immunity shields an officer from suit when []he makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted. . . .  Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.  If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. 194, 198 (2004); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("The dispositive question is whether the violative nature of the particular conduct is clearly established.") (citation and quotation omitted); *City & County of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) ("An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood

that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate.") (citations and quotations omitted). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citation and quotation omitted). Qualified immunity is an immunity from suit rather than a mere defense to liability. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2019 (2014).

The Supreme Court has repeatedly held that the second prong of the qualified immunity analysis " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " *Brosseau*, 543 U.S. at 198 (quoting *Saucier v. Katz*, 533 U.S. at 201); *see City of Escondido, Calif. v. Emmons*, 139 S. Ct. 500, 502-03 (2019). "The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.' " *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)); *see Stevens-Rucker v. City of Columbus, Ohio*, 739 F. App'x 834, 839 (6th Cir. 2018) ("Plaintiff bears the burden of showing that defendants are not entitled to qualified immunity."). The burden applies to each claim. *See Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).

## Preliminary Matters

Plaintiffs' complaint is verified under penalty of perjury. (Compl., 8, ECF No. 1, PageID.8). It is considered as an affidavit in opposition to defendants' motion for summary judgment. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).

"[H]earsay evidence generally cannot be considered on a motion for summary judgment." *See Bluegrass Dutch Trust Morehead, LLC v. Rowan Cty. Fiscal Ct.*, 734 F. App'x 322, 327 (6th Cir. 2018).  The newspaper articles attached to defendants' reply brief (ECF No. 62-2, PageID.850-53) are disregarded because defendants offer no explanation how the Court could consider the articles without committing error.

Plaintiff Ewing's declaration is not being considered because he has interjected that his statements are true "to the best of [his] knowledge, information, and belief." (ECF No. 54-1, PageID.783).  "[S]tatements made on belief or on information and belief, cannot be utilized on a summary-judgment motion." *Ondo v. City of Cleveland*, 795 F.3d 597, 605 (6th Cir. 2015).

"The probative force of a declaration subscribed under penalty of perjury derives from the signature of the declarant.  Without the declarant's signature, a declaration is completely robbed of any evidentiary value." *Al-Zerjawi v. Kline*, No. 4:15-cv-2512, 2018 WL 1553768, at *5 (N.D. Ohio Mar. 29, 2018) (citation and quotation omitted).  Accordingly, the unsigned declaration of "Tameez Rabbaanee # 192751"[4] (ECF No. 54-1, PageID.791-92) is disregarded because it is not evidence. *See Sfakianos v. Shelby Cty. Gov't*, 481 F. App'x 244, 245 (6th Cir. 2012).

## Relevant Facts

---

[4] MDOC's records do not show any prisoner named Rabbaanee and that MDOC # 192751 is assigned to prisoner Johnny Jenkins.  (*see* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=192751 (last visited September 5, 2019).  Plaintiff Ewing's attempt to cure the signature defect by attaching another declaration to his unauthorized sur-reply brief (ECF No. 71-1, PageID.887-88) is ineffectual.  Although it appears that prisoner Jenkins uses the appellation of Tameez Rabbaanee, the declaration at issue is not signed.

Each plaintiff was an inmate at the Chippewa Correctional Facility (URF) during the period related to his claim. Defendants were MDOC employees in Lansing, Michigan.

Thomas Finco was the Deputy Director of Correctional Facilities Administration (CFA) from October 1, 2011, until his retirement on June 30, 2015. The duties of the Deputy Director included making the final decision on approval or denials of alternative menu requests pursuant to MDOC Policy Directive 05.03.150. (Finco Aff. ¶¶ 3-5, ECF No. 46-5, PageID.600). Deputy Director Finco did not have any personal involvement in the approval or denials of religious meal plan participation requests by prisoners as those decisions were made by the Special Activities Coordinator under MDOC Policy Directive 05.03.150. (Martin Aff. ¶ 4, ECF No. 46-2, PageID.582; ECF No. 46-5; Finco Aff. ¶ 6, PageID.600; Leach Aff. ¶ 4, ECF No. 49, PageID.727).

Michael Martin was the MDOC's Special Activities Coordinator from April 2008 until his retirement on February 14, 2014. (Martin Aff. ¶ 3, PageID.582). David Leach was MDOC's Special Activities Coordinator from April 2014 until his retirement on October 31, 2018. (Leach Aff. ¶ 3, PageID.727).

Defendants had no personal involvement in any meal preparation at any correctional facility. (Martin Aff. ¶ 7, PageID.583; Finco Aff. ¶ 12, PageID.602; Leach Aff. ¶ 18, PageID.731; ECF No. 54-1, PageID.777).

A.   Darrell Ewing # 623073

Plaintiff Ewing is a Muslim and a member of the Nation of Islam.  (Compl, 2, 4, PageID.2, 4).  He asked to be placed on URF's vegan religious meal plan.  (ECF No. 46-6, PageID.610).  In August 2015, Coordinator Leach received a Religious Meal Report and Recommendation and related documents.  (ECF No. 46-6, PageID.605-13).  Coordinator Leach denied plaintiff Ewing's request to be placed on the vegan religious meal plan because the food items that he was purchasing from the prison's store conflicted with his stated religious dietary requirements.  (Leach Aff. ¶ 7, PageID.728).

Allowing a prisoner to receive a religious meal when the prisoner flaunts the restrictions imposed on other same-faith prisoners could provoke resentment among other prisoners adhering to the tenets, which could lead to violence in the prison. (Leach Aff. ¶ 15, PageID.730).  Prisoner Ewing and all other plaintiffs had the opportunity to supplement their diets by purchasing items that complied with their professed religious dietary needs by purchasing those items through the prison's store.  Further, none of the plaintiffs were permanently barred from receiving a religious diet accommodation.  They could reapply as provided in MDOC policy directive 05.03.150.  (Leach Aff. ¶ 14, PageID.730; ECF No. 46-4, PageID.593-95).

Prisoner Ewing states that he trades or gives away food that he is not supposed to eat.  (Ewing Dep., 20, ECF No. 46-7, PageID.620).

-10-

B.    <u>Terico Allen # 194679</u>

Plaintiff Allen is a Muslim.  (Allen Decl. ¶ 18, ECF No. 57, PageID.812).  He asked to be placed on the list for URF's religious diet line.  (ECF No. 46-8, PageID.630).  In August 2015, Coordinator Leach received a Religious Meal Report and Recommendation and related documents.  (*Id.* at PageID.625-30; Leach Aff. ¶ 8, PageID.728).  Coordinator Leach denied plaintiff's request to be placed on the vegan religious meal plan because the food items that plaintiff was purchasing from the prison's store conflicted with his stated religious dietary requirements.  (Leach Aff. ¶ 8, PageID.728).

Prisoner Allen also requested to eat from an alternative religious menu that excluded soy products.  (ECF No. 46-9, PageID.634).  In October 2014, Coordinator Leach received an Alternative Religious Menu Request Memorandum and related documents.  (*Id.* at PageID.632-41).  Coordinator Leach recommended that plaintiff's request be denied because the items that he was purchasing from the prison's store conflicted with his stated dietary requirements.  (Leach Aff. ¶ 9, PageID.728-29).

In November 2014, Deputy Director Finco received a memorandum from Coordinator Leach recommending that plaintiff Allen's request to receive an alternative religious menu be denied.  (Finco Aff. ¶ 8, PageID.601; ECF No. 46-9, PageID.632).  Prisoner Allen had asked for an alternative religious menu based on the dietary guidelines found within the book "How to Eat to Live."  (Finco Aff. ¶ 8, PageID.601; ECF No. 46-9, PageID.634).  The food items that prisoner Allen had been purchasing from the prison's store conflicted with his stated religious dietary

-11-

requirements.  (ECF No. 46-9, PageID.632, 635-40; Leach Aff. ¶ 9, PageID.728-29). Deputy Director Finco denied plaintiff Allen's request because the food items that prisoner Allen had been purchasing from the prison's store 's prison store conflicted with his stated religious dietary requirements. (Finco Aff. ¶ 8, PageID.601).

Plaintiff Allen states that he has purchased store items for the purpose of trading and bartering and purchasing items for less fortunate individuals.  (Allen Dep., 23-24, ECF No. 46-10, PageID.649-50; Allen Decl. ¶ 16, PageID.812).

C.    Ramon King # 238074

Plaintiff King is a Muslim and a member of the Nation of Islam.  (Compl., 2, 4, PageID.2, 4; King Decl. ¶ 1, ECF No. 60, PageID.830).  He asked to eat from an alternative religious menu excluding soy products.  (ECF No. 46-16, PageID.702-05). In October 2014, Coordinator Leach received an Alternative Religious Menu Request Memorandum and related documents.  (*Id.* at PageID.701-10; Leach Aff. ¶ 10, PageID.729).  Coordinator Leach recommended that plaintiff's alternative menu request be denied because the items that he was purchasing from the prison's store conflicted with his stated dietary requirements.  (Leach Aff. ¶ 10, PageID.729).

In November 2014, Deputy Director Finco received a memorandum from Coordinator Leach recommending that plaintiff King's request to receive an alternative soy-free religious diet religious diet be denied.   (Finco Aff. ¶ 9, PageID.601; ECF No. 46-16, PageID.701).  Prisoner King had asked for an alternative religious menu based on the dietary guidelines found within the book "How to Eat to Live." (Finco Aff. ¶ 9, PageID.601;  ECF No. 46-16, PageID.703).   The items that

-12-

prisoner King had been purchasing from the prison's store conflicted with his stated religious dietary requirements.  (ECF No. 46-16, PageID.701, 706-10; Leach Aff. ¶ 10, PageID.729).  Deputy Director Finco denied plaintiff's request because his store purchases conflicted with his stated religious dietary requirements.  (Finco Aff. ¶ 9, PageID.601).

Plaintiff King states that he has purchased store items for the purpose of trading and bartering and that he has purchased items for less fortunate individuals. (King Decl. ¶ 24, PageID.833).

D.    Diarra Bryant # 254416

Plaintiff Bryant is a Muslim and a member of the Nation of Islam.  (Compl., 2, 4, PageID.2, 4).  He asked to eat from an alternative religious menu excluding soy products.  (ECF No. 46-11, PageID.655).  In July 2014, Coordinator Leach received a Religious Meal Report and Recommendation and related documents.  (*Id.* at PageID.655-62; Leach Aff. ¶ 11, PageID.729).  Coordinator Leach recommended that prisoner Bryant's request be denied because the food items that he was purchasing from the prison's store conflicted with his stated religious dietary requirements. (Leach Aff. ¶ 11, PageID.729).

In October 2014, Deputy Director Finco received a memorandum from Coordinator Leach recommending that plaintiff Bryant's request to receive an alternative soy-free religious menu be denied.  (Finco Aff. ¶ 10, PageID.601).  Prisoner Bryant had asked for an alternative religious menu based on the dietary guidelines found within the book "How to Eat to Live."  (Finco Aff. ¶ 10, PageID.601).  Deputy

-13-

Director Finco denied prisoner Bryant's request because the food items that he had been purchasing from the prison' store conflicted with his stated religious dietary requirements.  (Finco Aff. ¶ 10, PageID.601).

      E.    Robert Dykes # 201541

Plaintiff Dykes is Muslim and a member of the Moorish Science Temple of America, Inc.  (Compl., 3-4, PageID.3-4; Dykes Decl. ¶ 2, ECF No. 52, PageID.743). He asked to be placed on URF's vegan religious meal plan.  (Compl., 5, PageID.5; Dykes Decl. ¶ 3, PageID.743).

In November 2015, Coordinator Leach received a Religious Meal Interview Report and Recommendation and related documents.  (ECF No. 46-14, PageID.683-90; Leach Aff. ¶ 13).  Coordinator Leach denied prisoner Dyke's request because the items that he had been purchasing from the prison's store conflicted with his stated religious dietary requirements.  (Leach Aff. ¶ 13, PageID.730).

Prisoner Dykes states that he generally trades prohibited foods, but on occasion, he does consume prohibited foods.  (Dykes Dep., 25, ECF No. 46-15, PageID.697; Dykes Decl. ¶¶ 7, 8, PageID.744).

Non-party prisoners[5] state that, at an unspecified time before they were approved to eat from the vegan religious meal plan, they purchased items from the prison's store.  (Conway Decl. ¶¶ 1-3, ECF No. 54-1, PageID.772; Betty Decl. ¶¶ 1-3, ECF No. 56, PageID.808).

---

[5] The denial of dietary requests made by non-party prisoners (ECF No. 54-1, PageID.787, 789) are not at issue in this lawsuit.

## Discussion

### I.    Personal Involvement

Defendants had no personal involvement serving the meals at URF that plaintiffs allege were contaminated with pork.  It is well established that government officials may not be held liable for the unconstitutional conduct of their subordinates or others under a theory of *respondeat superior* or vicarious liability.  *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *See Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  I find that defendants are entitled to summary judgment on all plaintiffs' claims based on URF meals allegedly contaminated with pork.

Coordinator Martin retired in February 2014, long before any of the decisions on the dietary requests at issue were made.  I find that Coordinator Martin is entitled to judgment in his favor on all plaintiffs' claims.

### II.    First Amendment

The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ...."  U.S. CONST. amend I.  The right to freely exercise one's religion is applicable to the States through the Fourteenth Amendment.  *See Cantwell v. Conn.*, 310 U.S. 296, 303 (1940).

To establish that this right has been violated, each plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) defendant's behavior infringes upon this practice or belief.  *See Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same).

The Supreme Court has observed that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also Turner v. Safley*, 482 U.S. 78, 84 (1987) ("[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution").  Thus, while "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates nevertheless retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987).  But "simply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations."  *Wolfish*, 441 U.S. at 545.  Operating a prison is a difficult task requiring "expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner*, 482 U.S. at 85.

When reviewing an inmate's claim of constitutional violation, courts must balance this policy of judicial restraint with the need to protect inmates' constitutional rights.  *See Turner*, 482 U.S. at 85.  The standard by which this balancing occurs was articulated by the *Turner* Court, which held that, "when a

-16-

prison regulation impinges on inmates' constitutional rights, the regulation is valid

if it is reasonably related to legitimate penological interests." *Id.* at 89. This standard

represents a "reasonableness test less restrictive than that ordinarily applied to

alleged infringements of fundamental constitutional rights." *Flagner*, 241 F.3d at

481 (citation and quotation omitted).

The *Turner* Court identified four factors that are relevant in determining the

reasonableness of a challenged prison regulation:

> (1) there must be a valid, rational connection between the prison
> regulation and the legitimate governmental interest put forward to
> justify it;
>
> (2) whether there are alternative means of exercising the right that
> remain open to prison inmates;
>
> (3) the impact that accommodation of the asserted constitutional right
> will have on guards and other inmates, and on the allocation of prison
> resources generally; and
>
> (4) whether there are ready alternatives available that fully
> accommodate the prisoner's rights at a *de minimus* cost to valid
> penological interests.

*Turner*, 482 U.S. at 89-91.

Defendants bear the initial burden to articulate a valid, rational connection

between the challenged action and the legitimate governmental interest that

motivated it. This burden is "slight, and in certain instances, the connection may be

a matter of common sense." *Sharp v. Johnson*, 669 F.3d 144, 156 (3d Cir. 2012). If

the first factor is satisfied, the remaining three factors are considered and balanced

together; however, they are "not necessarily weighed evenly," but instead represent

"guidelines" by which the court can assess whether the actions at issue are reasonably

-17-

related to a legitimate penological interest. *Flagner*, 241 F.3d at 484. The *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Turner*, 482 U.S. at 90-91. Instead, the issue is simply whether the policy at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484.

Defendants have provided evidence that their decisions were based on the fact that each plaintiff was contemporaneously purchasing food items that were inconsistent with the religious meal accommodation he was requesting. Permitting prisoners to participate in the religious meal program while simultaneously purchasing foods that were inconsistent with their requested religious diet presented security concerns: "Allowing a prisoner to have a religious meal when he openly flaunts restrictions imposed on other same-faith prisoners could provoke resentment amongst other prisoners who are adhering to the tenets, which could lead to violence within the facility." (Leach Aff. ¶ 15, ECF No. 49, PageID.730).

Plaintiffs Dykes, Ewing, Allen, and King argue that their store purchases were irrelevant because they traded items with other prisoners. (Dykes Brief, 2, ECF No. 51, PageID.736; Ewing Brief, 6, 12, ECF No. 54, PageID.758, 764, Allen Decl. ¶ 16, ECF No. 57, PageID.812; King Decl. ¶ 24, ECF No. 60, PageID.833). Plaintiffs' store purchases were relevant, and they provided no evidence indicating that they offered the decisionmaker an explanation how such purchases were consistent with their religious dietary needs.

-18-

Plaintiffs Dykes, Ewing, Allen, and King also argue that their store purchases were irrelevant and that defendants' reliance on them was misleading because plaintiffs' Religious Meal Participation Agreements would not go into effect until after a religious diet was approved.  (Dykes Brief, 2, PageID.736; Ewing Brief, 5, PageID.757; Allen Decl. ¶¶ 10-11, PageID.811; King Decl. ¶¶ 18-19, PageID.832). This argument is likewise unpersuasive.  The decisions to deny plaintiffs' requests based on their store purchases were reasonable in the absence of any agreement.  "It is reasonable for prison officials to deny special religious diets to prisoners who consume or purchase food which is inconsistent with the requested religious diet." *Perreault v. Mich. Dep't of Corr.*, No. 1:16-cv-1447, 2018 WL 3640356, at *3 (W.D. Mich. Aug. 1, 2018) (citing *Berryman v. Granholm*, 343 F. App'x 1, 6 (6th Cir. 2009)).

It is also well recognized that prison officials have a legitimate interest in maintaining discipline within the prison.  "Permitting [p]laintiff to participate in a religious diet program when he has a demonstrated history of consuming or purchasing food in violation of the tenets of his stated religion could negatively impact prison security as such could cause resentment among prisoners who adhere to their faith's dietary restrictions*." Perreault*, 2018 WL 3640356, at *3.  Defendants have established that there exists a valid, rational connection between their actions and the legitimate governmental interest put forward to justify such.

The remaining *Turner* factors likewise weigh in defendants' favor.  Prisoners can supplement their diet by purchasing food items from the prison store.  Plaintiffs have not been permanently barred from receiving a religious diet accommodation, as

they can reapply for such as provided in the relevant MDOC Policy Directive.  (Leach Aff. ¶ 14, PageID.730).

I recommend that the Court grant defendants' motion for summary judgment on plaintiffs' First Amendment claims.

## III.    Fourteenth Amendment Equal Protection

The Equal Protection Clause of the Fourteenth Amendment states that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1; *see Michael v. Ghee*, 498 F.3d 372, 379 (6th Cir. 2007).

Each plaintiff was required to present evidence demonstrating "intentional and arbitrary discrimination" by the state.  That is, he must demonstrate that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Each plaintiff was required to present evidence that provision of special diet to other prisoners "constitute[d] disparate treatment of similarly-situated individuals" and "further prove that the disparate treatment in question is the result of intentional and purposeful discrimination."  *Robinson v. Jackson*, 615 F. App'x 310, 314 (6th Cir. 2015).  Plaintiffs did not present evidence that they were treated differently from similarly situated prisoners or that the denial of their requests for special diets was the result of intentional and purposeful discrimination. I find that defendants are entitled to judgment in their favor as a matter of law on plaintiffs' equal protection claims.

-20-

## IV.    RLUIPA

RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest.  42 U.S.C. § 2000cc-1(a).

The statute does not define the term "substantial burden."  Nonetheless, to come within the scope of RLUIPA the burden in question must render religious exercise "effectively impracticable."  *Perreault*, 2018 WL 3640356, at *4; *see also, Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise).  A "substantial burden" requires something more than an incidental effect on religious exercise."  *Morgan v. Trierweiler*, No. 2:19-cv-3, 2019 WL 2098179, at *4 (W.D. Mich. May 14, 2019).  A burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise."  *Kitchen v. Leach*, No. 1:17-cv-371, 2019 WL 2647892, at *3 (quoting *Konikov v. Orange County, Fla.*, 410 F.3d 1317, 1323 (11th Cir. 2005)); *see also Clinton v. Duby*, 2018 WL 5276252, at *3 ("RLUIPA was not intended to create a cause of action in response to every decision which serves to inhibit or constrain religious exercise, as such would render meaningless the word 'substantial.' ").

Each plaintiff bears the burden to establish that his ability to exercise his religion has been substantially burdened.  *See Kaufman v. Schneiter*, 474 F. Supp.2d 1014, 1025 (W.D. Wis. 2007).  Denial of participation a special meal program does not constitute a substantial burden unless the removal or denial is permanent.  *See, e.g.,*

*Ketzner v. Williams*, No. 4:06-cv-73, 2008 WL 4534020 at *26 (W.D. Mich. Sept. 30, 2008).   None of the denials of the requests at issue were permanent. Plaintiffs' rights under RLUIPA were not violated by defendants' decisions not to allow plaintiffs to receive religious dietary accommodations.

Accordingly, I recommend that the Court grant defendants' motion for summary judgment on plaintiffs' RLUIPA claims.

## V.    Qualified Immunity

Defendants are also entitled to summary judgment on plaintiff's claims for damages against them in their individual capacities on the basis of qualified immunity.   Plaintiffs have not presented evidence sufficient to satisfy the first prong of the qualified immunity analysis on those claims for the reasons stated in sections I through III.

The second prong of the qualified immunity analysis must be undertaken in light of the specific context of the case, not as a broad general proposition.   *See City of Escondido*, 139 S. Ct. at 503; *Brosseau*, 543 U.S. at 198.   It was each plaintiff's burden to convince the Court that the law was clearly when each defendant acted. *See Arrington-Bey v. City of Bedford Heights, Ohio*, 858 F.3d 988, 992-93 (6th Cir. 2017).

Plaintiff Dykes cites *Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991) and *Howard v. Adkinson*, 887 F.2d 134, 140 (8th Cir. 1989) in support of his argument that defendant Leach is not entitled to qualified immunity. (Dykes Brief, 6, ECF No. 51, PageID.740).   These cases did not clearly establish the right that plaintiff Dykes

-22-

claims defendants violated.  Neither case addressed a prisoner's First Amendment, Fourteenth Amendment or RLUIPA rights regarding prison food.  In *Boretti*, the Sixth Circuit addressed a prisoner's claim of deliberate indifference to serious medical needs in violation of his Eighth Amendment rights.  930 F.2d at 1153-56.  In *Howard,* the Eighth Circuit addressed a prisoner's Eighth Amendment claim based on filthy cell conditions.  887 F.2d at 136-40.  Plaintiff Dykes has not shown that defendants' actions violated any his clearly established rights.

Plaintiff Ewing cites *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) and *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998) in support of his argument that defendants are not entitled to qualified immunity.  (Ewing Brief, 16-17, ECF No. 54, PageID.768-69).  Both cases involved claims that the defendants' actions violated the plaintiffs' Fourth Amendment rights.  *Humphrey*, 482 F.3d at 841-47; *Kain*, 156 F.3d at 672-73.  These cases did not clearly establish the right that plaintiff Ewing claims defendants violated because they did not address a prisoner's First or Fourteenth Amendment or RLUIPA rights regarding prison food.  Plaintiff Ewing has not shown that defendants' actions violated any of his clearly established rights.

Plaintiffs Allen, King, and Bryant did not address defendants' claims of entitlement to qualified immunity.  These plaintiffs did not carry their burden by ignoring it.  *See Douglas v. Muzzin*, No. 1:15-cv-41, 2017 WL 4310773, at *6 (W.D. Mich. Sept. 28, 2017).  Accordingly, I find that defendants are entitled to qualified immunity on plaintiffs' claims for damages against them in their individual capacities.

## **Recommended Disposition**

For the reasons set forth herein, I recommend that the Court grant defendants'

motion for summary judgment (ECF No. 45) and enter judgment in defendants' favor

on all plaintiff's claims.

Dated:   September 18, 2019              /s/  Phillip J. Green
                                        PHILLIP J. GREEN
                                        United States Magistrate Judge


## **NOTICE TO PARTIES**

ANY OBJECTIONS to this Report and Recommendation must be filed and served
within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R.
CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH.
LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver
of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v.
Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v.
Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See
McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier
Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).